Judgment rendered April 9, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,279-JAC

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

MICHAEL GAUTHIER                                Plaintiff-Appellant

versus

LINDSEY JOHNS                                   Defendant-Appellee

* * * * *

Appealed from the
Eighth Judicial District Court for the
Parish of Winn, Louisiana
Trial Court No. 47,662

Honorable Anastasia Wiley, Judge

* * * * *

LAW OFFICES OF CHRIS L. BOWMAN          Counsel for Appellant
By: Chris L. Bowman

LAW OFFICE OF GARY D. NUNN             Counsel for Appellee
By: Gary D. Nunn

* * * * *

Before STEPHENS, HUNTER, and ELLENDER, JJ.

**STEPHENS, J.,**

This custody dispute arises from the Eighth Judicial District Court, Parish of Winn, the Honorable Anastasia Wiley, Judge, presiding. The parties in this case were awarded joint custody of their minor child. The father, Michael Gauthier ("Mr. Gauthier"), appeals the trial court's judgment as it relates to the custodial time he was awarded with the child, the ability to claim the child as a dependent for income tax purposes, and the designation of the child's mother, Lindsey Johns ("Ms. Johns"), as the domiciliary parent. For the reasons expressed, we affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

Mr. Gauthier and Ms. Johns, both residents of Winn Parish, had one child together, A.G., born on June 27, 2018. Although the couple chose not to marry, Mr. Gauthier acknowledges A.G. and is listed on her birth certificate as the father. The couple remained together until A.G. was three years old, at which time the parties separated. Ms. Johns became the primary caretaker of A.G., who is now six years old and primarily resides with Ms. Johns. A.G. is in the first grade at Calvin High School where Ms. Johns is in her third year of working as a paraprofessional for the Special Education Department ("SPED").

After the couple separated, Mr. Gauthier began working in the oil field industry. At one point, his employment required him to be away from home for extended periods of time, including one job where he was away for two months at a time. In September 2023, Mr. Gauthier accepted a new position with Nabors Drilling which resulted in a 14 days on/14 days off schedule. Despite his new work schedule, Mr. Gauthier and Ms. Johns were

unable to agree on a visitation plan for the 2023-24 school year. As a result, Mr. Gauthier filed a petition for custody on June 26, 2024, in which he requested joint custody of A.G., subject to a joint custody implementation plan. He also requested that the parties alternate claiming the child as a dependent for the income tax dependency exemption. In her answer, Ms. Johns requested that she be named the primary domiciliary parent of A.G., with Mr. Gauthier having reasonable custody periods taking into consideration his out-of-state work schedule. She also asked that the court deny Mr. Gauthier's request to claim their daughter as a dependent every other year for tax exemption purposes.

At the hearing, Ms. Johns testified that the parties cannot agree on a visitation schedule during the school year. She stated that prior to the date of Mr. Gauthier's petition, he would have A.G. on the weekends during his 14 days off from work. He would pick A.G. up from school on Fridays and return her to Ms. Johns by 6:00 p.m. on Mondays. When questioned about her problem with Mr. Gauthier having more time with A.G. during the school year, she explained that her first issue is the distance from Mr. Gauthier's home to the school. She stated that he lives in Georgetown, which she alleged is 45 minutes from A.G.'s school whereas Ms. Johns, who works at the school, lives only 15 miles from it. She also testified that she felt that different custody arrangements during the school week are detrimental to a child's grades and emotions. Based on her experience working in the school system, Ms. Johns testified that keeping a child from a stable routine is not effective for the child's schooling experience.

While Ms. Johns indicated it would be hard on her daughter if A.G. were to stay with Mr. Gauthier during the school week, she also suggested

2

that Mr. Gauthier would be unreliable in dropping off and picking up A.G. from school. Ms. Johns testified to an instance a week prior to the court date in which A.G. was sick and needed to be picked up from school. When Ms. Johns contacted Mr. Gauthier about getting A.G. from school, he was unable to keep her while she was sick because he had prior plans. Although Ms. Johns suggested this had happened before, she only informed the court about this one instance.

Ms. Johns also testified that she is in school at Northwestern State University to become a teacher, and she expects to graduate sometime between May and December of 2025. She stated that while she works as a paraprofessional, she relies on the tax exemption to help her get through the year. She indicated that, although Mr. Gauthier makes his child support payments, he does not assist with anything further. She testified that she pays for anything extra that comes up, and the income tax exemption helps balance out those extra expenses associated with extracurricular activities for A.G.

Mr. Gauthier testified that he began working for Nabors Drilling in September 2023. He stated that A.G. is his only child and insisted that he wants to spend more time with her during his weeks off work. Similar to Ms. Johns' testimony, Mr. Gauthier indicated that the summer and holiday custodial schedules were not a big issue. Primarily, Mr. Gauthier testified that he has an issue with the custodial schedule during the school year. He told the court that he wanted to have more time with A.G. during the school year during his time off work (his 14 days off). He testified that he could pick A.G. up from school on Wednesdays at the beginning of his time at

3

home, keep her the following week, and return A.G. to either her mother or to school before he leaves for work on Tuesdays (12 days).

Mr. Gauthier gave his address to the court and testified that his home in Georgetown is a 35-minute drive from his daughter's school. He indicated that he has never had the chance to assist his daughter with schoolwork because Ms. Johns has refused to give him overnight stays with A.G. during the school week. He stated that he has asked multiple times, but Ms. Johns has refused each time he has sought overnight time during a school week. Mr. Gauthier also told the court that he would have no problem getting A.G. to school on time, picking her up from school timely, and helping with her homework if he is given custodial time during the school week. Mr. Gauthier did admit that his work sometimes requires an alteration in his schedule, but he stated that he would know about the changes ahead of time and would be able to coordinate with Ms. Johns in advance if the custody schedule needed to be altered.

Mr. Gauthier indicated in his testimony that he is not told about A.G.'s school activities. Although he acknowledged that he does have access to the school's system, he does not get to see what his daughter brings home. He does not have access to her homework folder, her calendar, or things of that nature because he does not have her on school nights. Mr. Gauthier emphasized that Ms. Johns does not tell him about things like open house. Even though he may be at work, he stated that he feels like he should be told so he can inform his family about those events so they can support A.G. while he is away. Mr. Gauthier also stated that he tries to have contact with his daughter while he is away, but it can sometimes be difficult to

Facetime her or call her because she is six years old and gets easily distracted.

When questioned about his ability to watch A.G. when she was sick, Mr. Gauthier indicated that he was already out of town when Ms. Johns contacted him about picking up A.G. from school. He stated that he had no notice when Ms. Johns called, and he pointed out that he knew someone was there to help out—A.G.'s grandfather. According to Mr. Gauthier, if no one else had been able to keep A.G., he would have canceled his plans and been there to take care of her. Mr. Gauthier also described his time off and suggested that during his 14 days off, he would have all the time in the world to care for A.G. He also stated that his wife would be available to help with A.G. Mr. Gauthier testified that his wife, whom he married on March 2, 2024, is a critical care nurse at Cabrini Hospital in Alexandria, Louisiana. Her work as an R.N. allows her to make her own schedule during the week so long as she works three 12-hour shifts.

Mr. Gauthier testified that he is current on his child support, he provides health insurance for A.G., and he maintains a double life insurance policy on A.G. He indicated that his child support obligation is $900 per month. Mr. Gauthier testified that being able to claim A.G. for tax exemption purposes would be a significant benefit to him, especially if he were able to have her for longer periods of visitation.

Kaylee Gauthier, Mr. Gauthier's wife, and Wendy McQuillian, Ms. Johns' mother, also testified at trial. They both testified to the parties' fitness as parents and the love they each have for their daughter. Both witnesses explained that they help with A.G. whenever they are needed, and

that both parents prioritize the well-being of A.G.  At the close of the testimony, the trial court took the matter under advisement.

On August 26, 2024, the trial court issued its judgment and its written reasons for judgment.  The trial court designated Ms. Johns as the domiciliary parent and the physical custodian of A.G. when she is not in Mr. Gauthier's physical custody.  It also determined that so long as Ms. Johns remains employed, she will be able to claim the child as a dependent on her federal and state income tax returns every year.  The trial court implemented the following visitation schedule during the school year:

a) EXTENDED WEEKENDS: If Mr. Gauthier is working his 2 week off and 2 week on schedule, he shall have physical custody of the minor child starting the Friday when he is off work when school lets out, until the day before school resumes at 6:00 p.m. with the drop off at the store by the railroad tracks in Winnfield, where they have been doing visitation exchanges.

   i. HOWEVER If he changes his job and remains at home more with a different work schedule, he shall have visitation on the 1st, 3rd, and 5th weekends of each month from Friday after school until the day before school resumes at 6:00 p.m. with the pick up being from school and the drop off being at the store. This weekend is determined by the first Friday, third Friday, and fifth Friday of each month. This schedule ends when school lets out for the summer and is trumped by the Holiday Schedule below, and suspended by the Summer Schedule.

b) MID WEEK VISITATION: If Mr. Gauthier is home during the week, he shall enjoy additional physical visitation with the child during the school year on every Wednesday, when he can pick up [A.G.] from school and visit until 7:00 p.m. at which time he will meet Ms. Johns at the store where they normally meet. He shall help [A.G.] with her homework and have time to visit. This visitation is suspended during the Holiday Visitation and Summer Schedule.

6

In its written reasons for judgment, the trial court opined that while some factors were equal between the parties, there were several factors that weighed heavily in Ms. Johns' favor as it pertains to A.G.'s best interest. The trial court determined that Mr. Gauthier lives "far away in the woods" on the other side of the parish from his daughter and her school. Similarly, he has chosen a job with a work schedule that requires him to be away from home. The trial court suggested that Mr. Gauthier does not seem concerned about how his employment affects A.G. The court highlighted that the visitation should be in the best interest of A.G., and equal time with everyone may not be in her best interest because she has lived her whole life with her mother and sister while having visitation with her father. The trial court implemented a visitation plan and indicated that if Mr. Gauthier changes his employment and is home more, his visitation would be different. It is from this judgment that Mr. Gauthier has appealed.

**DISCUSSION**

On appeal, Mr. Gauthier argues that the trial court erred by awarding him only six days a month with his minor child, failing to alternate the income tax dependency, and designating Ms. Johns as the primary domiciliary parent. To support his assertions, Mr. Gauthier emphasizes that no testimony was presented as to his unfitness as a parent or his unwillingness to provide for his daughter. Instead, Mr. Gauthier maintains that the trial court heavily focused on the distance from his house to his daughter's school, and suggests that this consideration in developing a custody plan is clearly erroneous and deprives him of valuable time with his daughter. Mr. Gauthier also argues that nothing in the testimony suggests that A.G.'s schoolwork or performance in school would be negatively

7

affected as a result of A.G. splitting time between the parties. Mr. Gauthier opines in his brief that it is Ms. Johns' desire to have both of her children (A.G. and a daughter from a different relationship) be on the same schedule for her convenience.

In response, Ms. Johns argues that the trial court did not err in its custody ruling, designating her as the domiciliary parent, and giving her the income tax exemption every year. First, she emphasizes that Mr. Gauthier, being home for 13-day periods, has been granted two long weekends and each Wednesday evening during the time he is home. Of the 13 days he is home, Ms. Johns maintains that Mr. Gauthier has A.G. for at least eight days. She also contends that during the summers when Mr. Gauthier has A.G. for approximately two weeks, she is unable to see their daughter during those two weeks.[1] According to Ms. Johns, the evidence shows that the trial court considered much more than the distance between the parties' residences. She argues that she lives only 15 miles from her daughter's school, which is where she works. Not only does Mr. Gauthier live 35 miles from their daughter's school, but Ms. Johns also maintains that those 35 miles consist of roads that are not "good" which require travel from one side of the parish to the other. Ms. Johns suggests that the trial court did exactly what was required of it regarding La. R.S. 9:335 and considered the factors in La. C.C. art. 134.

A court of appeal may not set aside a trial court's findings of fact in the absence of manifest error or unless they are clearly wrong. *Kinnett v.*

---

[1] In her brief, Ms. Johns requested that she be granted visitation on Wednesdays during Mr. Gauthier's two-week custody period during the summer schedule. However, Ms. Johns did not file an answer to Mr. Gauthier's appeal, nor has she filed an appeal from the trial court's judgement.

*Kinnett*, 20-01134 (12/10/21), 332 So. 3d 1149; *Evans v. Lungrin*, 97-0541 (La. 2/6/98), 708 So. 2d 731; *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989); *Buckner v. Berry*, 55,832 (La. App. 2 Cir. 7/17/24), 400 So. 3d 116; *Dunn v. Dunn*, 53,665 (La. App. 2 Cir. 1/13/21), 309 So. 3d 969. In order to reverse a trial court's determination, an appellate court must review the record in its entirety and determine that (1) a reasonable factual basis does not exist for the finding, and (2) the record establishes that the trial court is clearly wrong or manifestly erroneous. *Buckner*, *supra*; *Lowery v. St. Francis Medical Center*, 54,513 (La. App. 2 Cir. 5/25/22), 339 So. 3d 770; *Dunn*, *supra*; *Toston v. St. Francis Med. Ctr., Inc.*, 49,963 (La. App. 2 Cir. 10/14/15), 178 So. 3d 1084; *Moss v. Goodger*, 12-783 (La. App. 3 Cir. 12/12/12), 104 So. 3d 807.

If the trial court's findings of fact are reasonable, appellate courts should not reverse them. *Id*. However, appellate courts are also prohibited from simply rubberstamping a trial court's findings of fact. *Id*. Instead, we are constitutionally mandated to review all the facts contained in the record and determine whether the trial court's findings are reasonable considering the entire record. *Id*.

*Designation of Domiciliary Parent*

In designating a domiciliary parent, for purposes of joint custody determination, consideration must be given to the best interest of the child factors and any other relevant factors. La. C.C. art. 134; *Fuller v. Fuller*, 54,098, p. 18 (La. App. 2 Cir. 7/21/21), 324 So. 3d 1103, 1113, *writ denied*, 21-01223 (La. 9/27/21), 324 So. 3d 621. La. R.S. 9:335(3) provides:

The implementation order shall allocate the legal authority and responsibility of the parents.

9

. . . .

> B. (1) In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown.
>
> (2) The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.
>
> (3) The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.

Mr. Gauthier urges that the trial court incorrectly designated Ms. Johns as A.G.'s domiciliary parent. However, the record reflects that the trial court properly exercised its broad discretion in designating Ms. Johns as A.G.'s domiciliary parent. With Mr. Gauthier's work schedule requiring him to be away from home for extended periods of time, Ms. Johns is the parent with whom A.G. will primarily reside. A.G.'s primary residence for the last three years has been with her mother and her sister. While we agree with Mr. Gauthier's assertion that no evidence supports that he is unfit to receive this designation, we agree with the trial court's conclusion that it is in A.G.'s best interest that Ms. Johns be named as the domiciliary parent in light of Mr. Gauthier's employment and Ms. Johns' history as A.G.'s primary caretaker.

_Claiming Dependent for Income Tax Purposes_

Regarding Mr. Gauthier's request to alternate the income tax dependency between the parties, the trial court designated Ms. Johns as the

parent to claim A.G. as a dependent on her federal and state income tax return every year. The trial court did stipulate that if Ms. Johns is unemployed for a full taxable year and does not file a tax return, and Mr. Gauthier is employed and current on his child support payment, he can then claim A.G. for that year only.

According to La. R.S. 9:315.18, a non-domiciliary party whose child support obligation equals or exceeds fifty percent of the total child support obligation shall be entitled to claim the child as a dependent for federal and state tax purposes if, after a contradictory motion, the judge finds both of the following: (a) no arrearages are owed by the obligor, and (b) the right to claim the child, or some of the children in the case of multiple children, would substantially benefit the non-domiciliary party without significantly harming the domiciliary party.

In her testimony, Ms. Johns indicated that she relies on this exemption throughout the year. Ms. Johns testified that her income is low as a paraprofessional, and she pays for all of A.G.'s extracurricular activities. She further explained to the court that having to alternate claiming A.G. as a dependent for income tax purposes would be detrimental to her. As a single mother, claiming A.G. as a dependent on her income taxes assists her in getting through the year and balancing her budget. Given Ms. Johns' testimony and considering that she is pursuing her degree to become a teacher, we find that the trial court did not abuse its discretion in denying Mr. Gauthier's request that the parties alternate each year claiming A.G. as a dependent for income tax purposes.

11

*Joint Custody*

The primary consideration in any child custody determination is the best interest of the child. La. C.C. art. 131; *Cook v. Sullivan*, 20-01471 (La. 9/30/21), 330 So. 3d 152; *Evans, supra*; *Buckner, supra*; *Abrams v. Turner*, 52,922 (La. App. 2 Cir. 9/25/19), 282 So. 3d 304. Every child custody case must be viewed on its own particular set of facts and relationships involved, *Cook, supra*, with the paramount goal of reaching a decision which is in the best interest of the child. *Buckner, supra*. The non-exclusive list of factors to be considered in determining the best interest of the child found in La. C.C. art. 134 are:

1) The potential for the child to be abused, which shall be the primary consideration.

2) The love, affection, and other emotional ties between each party and the child.

3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

6) The permanence, as a family unit, of the existing or proposed custodial home or homes.

7) The moral fitness of each party, insofar as it affects the welfare of the child.

8) The history of substance abuse, violence or criminal activity of any party.

9) The mental and physical health of each party.

10) The home, school, and community history of the child.

11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

13) The distance between the respective residences of the parties.

14) The responsibility for the care and rearing of the child previously exercised by each party.

While the court is not bound to make a mechanical evaluation of all the statutory factors listed in Article 134, it should decide each case on its own facts in light of those factors. *Fuller, supra.* Nor is the court bound to give more weight to one factor over another; rather, when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented. *Id.; Abrams, supra.* The factors are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. *Id.*

In the instant case, joint custody was awarded. To the extent it is feasible and in the best interest of the child, physical custody of the child should be shared equally. La. R.S. 9:355(A)(2)(a). Nonetheless, a finding that joint custody is in the best interest of the child does not necessarily require an equal sharing of physical custody. *Buckner, supra.* The implementation order should allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of "frequent and continuing contact" with both parents. La. R.S. 9:335(A)(2)(a).

In its written reasons for judgment, the trial court noted that both Mr. Gauthier and Ms. Johns seemed genuine in their testimony and both without a doubt love A.G. The court considered factors (2), (3), (4), and (7) to be equal between the parties but unequal in factors (5), (6), (10), (13), and

13

(14).[2] Most notably, the trial court emphasized heavily Mr. Gauthier's work schedule and the distance of Mr. Gauthier's home from the child's school. The trial court also highlighted the importance of considering the child's best interest and providing a stable environment for the child. Based on these reasons, the trial court awarded the parties joint custody of A.G. While joint custody is clearly in A.G.'s best interest we cannot say that the record supports the extremely limited physical custody Mr. Gauthier was allocated in the JCIP, and the record does not support the trial court's implicit conclusion that more time spent with Mr. Gauthier during his time off work would not be in A.G.'s best interest.

In his testimony, Mr. Gauthier expressed that he wants more time with his daughter when he is home. Although Ms. Johns' testimony suggested that Mr. Gauthier would be unreliable during the school week, Mr. Gauthier assured the trial court that he could drop off and pick up A.G. from school if he is given time with her during the school week. In response, Ms. Johns could only testify as to one example of when Mr. Gauthier failed to assist her when A.G. was sick and needed to be picked up from school early. Ms. Johns attempted to further combat Mr. Gauthier's testimony by expressing concern about the roadways going from Mr. Gauthier's home to the school and A.G. being in the vehicle for a longer period of time.[3] The trial court

---

[2] The remaining factors were either irrelevant or not addressed in a negative manner.

[3] In Ms. Johns' testimony, she indicated that she arrives at school for her job each morning with A.G. between 7:25 a.m. and 7:30 a.m., and Ms. Johns lives 15 minutes from the school. According to the testimony, A.G. arrives at school approximately 20 minutes prior to her required admission time which is 7:42 a.m. As indicated by the record, on school mornings, A.G.'s total time travel and waiting for the bell to ring is 35 minutes. This 35-minute period is essentially equal to the travel time required for Mr. Gauthier to bring A.G. to school from his home address.

indicated in its reasons that the distance and travel time to and from school weighed heavily in its implementation of a visitation schedule. However, the record lacks any concrete evidence as to how this distance and travel time would negatively affect A.G. or her schoolwork. Only speculation is present in the record as to how visitation with Mr. Gauthier during the school week might affect A.G., and the record is silent as to A.G.'s actual academic performance and extracurricular activities and/or how more time with her father might impact these areas.

In reviewing the trial court's joint custody implementation order, we note that Mr. Gauthier's visitation with A.G. is approximately six to seven days out of the month with two weekends of physical custody and a few hours of visitation on Wednesdays when he is home. As set forth above, the implementation order should allocate time periods so that each parent has physical custody of the child to ensure that she has frequent and continuing contact with both parents. *See*, La. R.S. 9:355(A)(2)(q). Even though Mr. Gauthier's employment requires him to be away for 14 days at a time, six to seven days compared to Ms. Johns' time with her daughter during the month does not promote or ensure that A.G has *frequent and continuing contact* with her father. The language in the trial court's reasons for judgment and the actual physical custody award based on those reasons as set forth in the JCIP unfairly penalize Mr. Gauthier for his employment, suggesting that he must essentially find a new job if he wishes to spend more time with his daughter. Mr. Gauthier's position provides A.G. with health insurance and ensures that he is able to meet his child support obligations. Punishing Mr. Gauthier for his employment by limiting his physical custodial time with his daughter is unfair and constitutes an abuse of the trial court's discretion.

15

Given the record before us, we see no reason why Mr. Gauthier's time with A.G. during the school year should be limited to weekends and a midweek visit when he is on his "14 days home."

## CONCLUSION

For the reasons set forth above, we affirm the trial court's judgment awarding joint custody to the parties, its designation of Ms. Johns as the domiciliary parent, and its award to Ms. Johns of the right to claim the minor child as a dependent for income tax purposes. We reverse the allocation of physical custody as set forth in the JCIP and remand this matter to the trial court to award Mr. Gauthier periods of physical custody of A.G. to ensure that she has frequent and continuing contact with both of her parents and to issue a joint custody implementation plan in accordance therewith. Costs of this appeal are assessed equally to the parties.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**